1  DAVID W. TROTTER (# 97121)
   LAW OFFICES OF DAVID W. TROTTER
2  119 Allen Court
   Moraga, California 94556
3  Telephone: (925) 876-1503
   Email: david.trotter@dtrotterlaw.com
4

5  Attorney for Plaintiffs OPHCA, LLC,
   Clifford Orloff and Olga Orloff
6

7

8                UNITED STATES DISTRICT COURT

9            FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                  SAN FRANCISCO DIVISION

11

12

13
   OPHCA, LLC, a California limited liability      Case No. _____
14 company; CLIFFORD ORLOFF, an
   individual; and OLGA ORLOFF, an
15 individual,                                      **COMPLAINT FOR VIOLATION
                                                    OF FEDERAL CIVIL RIGHTS
16              Plaintiffs,                          UNDER 42 U.S.C. § 1983 AND
                                                    CALIFORNIA STATE LAW
17      vs.                                         (Cal. Civ. Code § 1954.50 *et seq.*),
                                                    DECLARATORY AND
18 THE CITY OF BERKELEY,                            INJUNCTIVE RELIEF**

19              Defendant.

20

21

22

23

24

25

26

27

28
                                    1

**INTRODUCTION**

1.    Plaintiffs OPHCA, LLC ("OPHCA"), Clifford Orloff and Olga Orloff (collectively, "Plaintiffs") bring this complaint for declaratory and injunctive relief against the City of Berkeley ("City" or "Defendant") due to its enactment of legislation that illegally and unconstitutionally requires property owners to transfer massive sums of money to the City and tenants in order to exercise an essential right of property ownership:  the right to redevelop property.

2.    Prior to 1995, the City imposed strict pricing controls on the rental of residential real property, including controls for both ongoing, existing tenancies and controls for new tenancies rented on the open market.

3.    In 1995, the California Legislature enacted the Costa-Hawkins Rental Housing Act, Cal. Civ. Code § 1954.50 *et seq.* (the "Costa-Hawkins Act").  The Costa-Hawkins Act prohibited the City and other municipalities from imposing rent control on rental housing constructed on or after February 1, 1995, and substantially limited the types of rent control that may be imposed on units constructed prior to February 1, 1995.  The clear intent of the Costa-Hawkins Act was to gradually phase out local rent control while also incentivizing the construction of new housing by freeing such housing from the financial and regulatory burdens of local rent control laws.

4.    In 2009, in *Palmer/Sixth St. Properties, L.P. v. City of Los Angeles* (2009) 175 Cal.App.4th 1396, 1405-1406, the California Court of Appeal held that the Costa-Hawkins Act preempts local inclusionary housing laws that compel property owners to choose between including below-market "affordable housing" units in newly constructed rental housing developments or paying an *in lieu* fee.

5.    The City acknowledges that *Palmer* rendered its previously-existing inclusionary housing law invalid and that "it is now precluded from conditioning the issuance of use permits on" any requirement that newly constructed rental units be rented at a prescribed "below-market" price. *City of Berkeley v. 1080 Delaware, LLC* (2015) 234 Cal.App.4th 1144, 1146-1147.

6.    Nevertheless, the City has consistently sought to avoid and circumvent the effects of the Costa Hawkins Act and the *Palmer* decision by refusing to approve the construction of new rental

COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §  1983 AND
CALIFORNIA STATE LAW (Cal. Civ. Code § 1954.50 *et seq.*)

1   housing in the absence of substantial affordable housing "mitigation fees" and purportedly "voluntary"

2   affordable housing concessions.  These and other anti-development policies of the City have posed

3   significant financial obstacles to the construction of new rental housing.  As a result, the City's rent

4   controlled housing stock has grown increasingly distressed, dilapidated, and unsafe as buildings age

5   and reach the end of their useful life.   Meanwhile, the construction of new housing has not kept pace

6   with demand, causing rental rates to soar.

7        7.     On March 8, 2016, the Berkeley City Council City adopted Ordinance No. 7458-NS

8   (the "Ordinance"), which became effective on or about April 7, 2016 and which is presently codified in

9   Chapter 23C.08 of the Berkeley Municipal Code ("BMC").  (A copy of the current version of Chapter

10  23C.08 of the BMC is attached as **Exhibit 1** hereto and incorporated by this reference herein.)  Section

11  2 of the Ordinance prohibits property owners from demolishing rental property unless, with narrow

12  exceptions, the owner "pay[s] a fee for each unit demolished" ("Demolition Mitigation Fee").  The

13  stated purpose of the Demolition Mitigation Fee is to "mitigate the impact of the loss of affordable

14  housing in the City of Berkeley."  (See BMC Section 23C.08.020(A).)  However, the Ordinance makes

15  no attempt to connect – causally of otherwise – the act of demolition to any purported loss of

16  affordability in rental housing.

17       8.     In addition to the per-unit Demolition Mitigation Fee, Section 2 of the Ordinance also

18  requires the owner of a demolished residential building to provide any tenant occupying the building

19  prior to demolition with both (1) "assistance with moving expenses" ("Moving Fees") and (2) a

20  payment equal to "the rent differential for a comparable replacement unit, in the same neighborhood, if

21  feasible, until the new units are ready for occupancy" ("Rent Subsidies").  (See BMC Section

22  23C.08.020(C)(1).)  When the new units are ready for occupancy, the Ordinance provides that each

23  prior tenant has a right of first refusal to rent the newly constructed units ("Rights of First Refusal"),

24  which for certain units includes a right to rent the units at the pre-redevelopment controlled rental rate.

25  (See BMC Section 23C.08.020(C)(3).)  There is no requirement that a tenant use these payments to

26  relocate, nor is there an income requirement for a tenant to be eligible for such rights.  Affluent tenants

27  as well as low income tenants are entitled to receive the Moving Fees, Rent Subsidies, and Rights of

28  First Refusal.

COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §  1983 AND
CALIFORNIA STATE LAW (Cal. Civ. Code § 1954.50 *et seq.*)

9.     The Demolition Mitigation Fees, Moving Fees, Rent Subsidies, and Rights of First Refusal apply on top of an "Affordable Housing Mitigation Fee" the City already imposes on newly constructed housing ("Construction Mitigation Fee").  On April 5, 2016, the City Council increased the Construction Mitigation Fee to $34,000 per market rate unit.  (BMC Section 22.20.065(A)(11).)

10.     Thus, under the terms of the Ordinance, an owner of a distressed 20-unit apartment complex seeking permission to demolish the pre-existing structure and replace it with a new 60-unit rental complex is and would be required to pay a Demolition Mitigation Fee for each of the 20 units demolished, *plus* a Construction Mitigation Fee of $34,000 for each of the 60 newly constructed units, *plus* moving expenses for 20 tenants, *plus* the aggregate cost differential for each of the 20 pre-existing sitting tenants to rent a "comparable unit" in the same neighborhood throughout the duration of construction.  The Ordinance thus requires a property owner seeking demolition to fund continued rent control protections at the same affordability levels that pre-existed demolition, notwithstanding the fact that the property owner will have also paid the City two different and independent fees to mitigate the purported loss of affordability allegedly caused by redevelopment of its property.  Upon completion of the new construction, the owner also is required to rent 20 of the new units to the prior tenants – and, if the owner elected to build below market rate units, is required under the Ordinance to do so at the previously existing rent controlled amounts – regardless of the tenant's financial means or the development costs incurred to construct the new housing.

11.     These fees and exactions forced and imposed upon property owners by the Ordinance add millions of dollars to the cost of redevelopment and are likely prohibitive of many major redevelopment projects of existing rental housing.  These exactions apply notwithstanding the fact that, in many cases, the new development increases the pre-existing housing supply and thereby eases – rather than exacerbates – pricing pressures under the laws of supply and demand.

12.     In fact, a March 25, 2015 Affordable Housing Nexus Study conducted for the City by BAE Urban Economics concluded that the $34,000 Construction Mitigation Fee that exists separate and apart from fees and exactions imposed under the Ordinance is the maximum fee that can feasibly accommodate the need for "new market-rate residential development" without "depress[ing] housing production."  The study also concluded that the reconstruction of demolished rent-controlled housing

1    imposes *less* of a burden on the City's affordable housing needs than newly constructed units.  The

2    City adopted the Ordinance despite these findings.

3          13.    On its face and as applied, the Ordinance (1) unconstitutionally takes property for a

4    private purpose and conditions an owner's exercise of core property rights on exactions unrelated and

5    disproportionate to any impact caused by such rights, (2) deprives landlords of property without due

6    process of law, (3) is irrational and arbitrary—creating unreasonable obstacles to the creation of new

7    housing that drive down the quality and supply of housing while driving up cost; (4) violates the

8    California Mitigation Fee Act, (5) imposes an impermissible burden on rights under, and is preempted

9    by, the Costa-Hawkins Act, and (6) imposes an impermissible burden on rights under, and is

10    preempted, by the California Health and Safety Code and the California Constitution.  Consequently,

11    the Ordinance violates the Takings Clause of the Fifth Amendment, the unconstitutional conditions

12    doctrine, procedural and substantive Due Process, the California Mitigation Fee Act, the Costa

13    Hawkins Act, the California Health & Safety Code, and the California Constitution.  The plaintiffs are

14    entitled to equitable relief under 42 U.S.C. § 1983, the Declaratory Judgment Act and California law,

15    including a preliminary and permanent injunction striking down the Ordinance.

16                              **THE PARTIES**

17          14.    Plaintiff OPHCA, LLC is a California limited liability company, existing and doing

18    business in the City of Berkeley.  Plaintiffs Clifford Orloff and Olga Orloff are long-term residents of

19    the City and majority owners of OPHCA, which is a closely held, family-owned business.  OPHCA

20    owns a distressed 18-unit apartment complex in close proximity to the campus of the University of

21    California at Berkeley (the "Property").  The Property is presently vacant.  More than three years ago,

22    OPHCA filed an application with the City to demolish and redevelop the Property.  OPHCA's

23    application remains pending.

24          15.    Defendant City of Berkeley is a political subdivision of the State of California and the

25    local governing authority in Berkeley.  The City enacted the Ordinance challenged by this lawsuit.

26    The City is entitled to sue and be sued, and it is constrained by the laws of the United States and the

27    State of California, including the United States Constitution, 42 U.S.C. § 1983, the Costa Hawkins Act,

28    the Mitigation Fee Act, the California Health & Safety Code and the California Constitution.

COMPLAINT FOR VIOLATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. §  1983 AND
CALIFORNIA STATE LAW (Cal. Civ. Code § 1954.50 *et seq.*)

1

**JURISDICTION AND VENUE**

2   16. The claims in this action arise, in part, under the Fifth Amendment of the United States

3 Constitution, as incorporated against the states by the Fourteenth Amendment, and the Due Process

4 Clause of the Fourteenth Amendment.  This Court therefore has jurisdiction under 42 U.S.C. § 1983

5 and 28 U.S.C. § 1331, and supplemental jurisdiction under 28 U.S.C. § 1367.  A remedy is sought

6 under the Declaratory Judgment Act, 28 U.S.C. § 2201.

7   17. Venue is proper in this Court because this action concerns a legislative enactment of the

8 City and private property affected by that legislative enactment, all of which are within the jurisdiction

9 of the Northern District of California.

10

**FACTS COMMON TO ALL CLAIMS**

11 *The Costa-Hawkins Act*

12   26. In August 1995, the California legislature enacted the Costa–Hawkins Act.  Cal. Civ.

13 Code § 1954.50 *et seq.*  The Act established what is known among landlord-tenant specialists as

14 "vacancy decontrol," declaring that "[n]otwithstanding any other provision of law," all residential

15 landlords may, except in specified situations, "establish the initial rental rate for a dwelling or unit."

16 Cal. Civ. Code § 1954.53(a).  The effect of this provision was to permit landlords "to impose whatever

17 rent they choose at the commencement of a tenancy."  *Palmer/Sixth St. Properties*, 175 Cal.App.4th at

18 1405-1406.

19   27. The Costa-Hawkins Act further provides that "[n]otwithstanding any other provision of

20 law, an owner of residential real property may establish the initial **and** all subsequent rental rates for a

21 dwelling or a unit" constructed after February 1, 1995. Cal. Civ. Code § 1954.52(a)(1) (emphasis

22 added).  The effect of this provision is to remove newly constructed buildings from local rent control

23 altogether.

24   28. The Costa-Hawkins Act, with narrow exceptions not applicable to this case, prohibits

25 cities from regulating the initial rents of rental units constructed prior to 1995 and from regulating rents

26 at all in newly-constructed units.  As interpreted by the California Court of Appeal, it also prohibits

27 cities from requiring the inclusion of affordable housing in newly constructed rental housing and from

28