IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OPHCA LLC, et al.,<br><br>    Plaintiffs,<br><br>  v.<br><br>CITY OF BERKELEY,<br><br>    Defendant. | No. 16-cv-3046 CRB<br><br>**ORDER GRANTING MOTION TO DISMISS, GRANTING IN PART AND DENYING IN PART MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT, AND VACATING HEARING** |

Defendant City of Berkeley ("the City") moves to dismiss a challenge to how it regulates the demolition of privately held rental housing. See Mot. (dkt. 19) at 1. In March 2016, the City adopted an ordinance that, among other things, requires a fee to offset "the impact of the loss of affordable housing" from the demolition of certain residential buildings. See Compl. (dkt. 3) ¶¶ 44-45. Plaintiffs OPHCA, LLC, and Clifford and Olga Orloff (together "OPHCA") argue that the ordinance exacts an unconstitutional taking without just compensation, violates procedural and substantive due process, and runs afoul of California law. See Compl. at 22-23 ¶¶ 1-9.

## I. BACKGROUND

OPHCA has been in the business of buying, renovating, and leasing apartment buildings since 1999 and owns approximately 840 residential apartment units in Berkeley, Sacramento, and Indiana. See Orloff Decl. (dkt. 24) ¶¶ 1, 4. OPHCA owns a distressed 18-unit residential property built in 1925 ("the property"), near the University of California at Berkeley. See Compl. ¶ 14; Orloff Decl. ¶ 3. The property has numerous habitability and safety defects, including mold and vermin infestation, corroded and substandard plumbing,

1 and a damaged foundation that inspectors cautioned "possibly would disintegrate in the event
2 of an earthquake." See Compl. ¶¶ 33-34.

3     Due to the distressed condition of the property, OPHCA filed an application with the
4 City in March 2013 seeking a permit to demolish it and build 56 new residential units. See
5 id. ¶ 36. After the City determined that the building was an "Unsafe Building" and "in need
6 of extensive repairs," Compl. ¶ 37, the City's Zoning Adjustment Board ("the ZAB")
7 recommended approving the permit in July 2015. Id. ¶¶ 37-38. But the City's Rent
8 Stabilization Board opposed demolition, which caused the City Council to remand OPHCA's
9 application to the ZAB for further findings on whether the company could make a "fair rate
10 of return" by renting the existing units. Id. ¶ 39. The ZAB failed to act, so the City Council
11 heard the matter again on July 28, 2016. See id. ¶¶ 40–41.

12     While OPHCA's use permit was pending, the Berkeley City Council adopted
13 Ordinance No. 7458-NS, which amended Chapter 23C.08 of the Berkeley Municipal Code
14 ("BMC"). See Compl. ¶ 7; see generally Compl. Ex. 1 (dkt. 3-4). Now the City may only
15 approve use permits for demolition of multi-unit buildings built before 1980 if (1) the
16 building is "hazardous," "unusable" or "infeasible to repair";[1] (2) the building "will be
17 moved to a different location within the City of Berkeley with no net loss of units"; (3) the
18 demolition is "necessary to permit construction of special housing needs facilities . . . that
19 serve the greater good of the entire community" or, most relevant here, (4) "to permit
20 construction approved . . . of at least the same number of dwelling units."
21 BMC § 23C.08.020(A)(1)-(4).

22     Under the fourth basis for demolition, "the project applicant shall be required to a [sic]
23 pay a fee for each unit demolished to mitigate the impact of the loss of affordable housing."
24 Id. The City Council "shall" set the fee "by resolution." Id. The fee "shall not exceed the
25 reasonable cost of either satisfying the additional demand for affordable housing . . . or of

---

[1] OPHCA claimed that the rehabilitation of the building was infeasible when it filed its application with the City in March 2013 to demolish OPHCA's building. Compl. ¶ 36. In January 2015, the City determined that the property was an "Unsafe Building" and "in need of extensive repairs throughout," but apparently did not deem repairs infeasible. See Compl. ¶ 37. That being so, the Court considers only the fourth section of 23C.08.020(A).

2

eliminating and/or reducing to an acceptable level any other impact which reasonably may be anticipated to be generated," nor shall the City "condition" a permit such that it "results in a deprivation of the applicant's constitutional rights." BMC § 22.20.070. No fees are due for projects that do not "generate any additional need for affordable housing . . . adequate employment training and placement services . . . or any other impact for which a mitigation and/or fee is otherwise required." BMC § 22.20.070. Applicants may also, "in lieu" of paying the fee, "provide a designated unit in the new project at a below market rate to a qualifying household in perpetuity. Id. But if tenants occupy the building at time of demolition, the landlord must "provide all sitting tenants notice of the [demolition] application," offer "assistance with moving expenses," and "subsidize the rent differential for a comparable replacement unit" during the interim renovation period. BMC § 23C.08.020.C. Displaced tenants have a "right of refusal" to move into the new building and a "right of first refusal to rent below-market rate units." Id.

On June 6, 2016 – before the City Council decided to approve its application – OPHCA filed this suit seeking to invalidate Sections 23C.08.020-070. See Compl. ¶¶ 54-100. On June 28, the City Council approved OPHCA's permit and required it to pay a demolition fee. See Iyengar Decl. (dkt. 20) Ex. A at 18 (unofficial minutes of Berkeley City Council Meeting). The City moved to dismiss the complaint under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). At the time of filing, the City Council had not set the amount of the fee. See Compl. ¶ 52; Mot. at 2.

After full briefing – with a bonus surreply from OPHCA – the Court took the case under submission on September 23, 2016. See H'rg Minutes (dkt. 41). The parties then entered mediation, which is ongoing. See Med. Order (dkt. 44). OPHCA nevertheless sought leave to file a 43-page amended complaint. See Mot. for FAC (dkt. 46).

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(1), the Court should dismiss a complaint that does not set forth an adequate basis for subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). "Lack of Article III standing requires dismissal for lack of subject matter

3

jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." Maya v. Centex Corp., 658 F.3d 1060, 1067 (9th Cir. 2011). The constitutional threshold question of standing "precedes, and does not require, analysis of the merits" of a claim, which is "necessarily assesse[d]" under Rule 12(b)(6). See id. at 1068. The Court may consider evidence outside the pleadings, including affidavits submitted by the parties. See Safe Air for Everyone v. Meyer, 373 F.3d 1035, 1039 (9th Cir. 2004).

Under Federal Rule of Civil Procedure 12(b)(6), the Court should dismiss a complaint if it does not plead facts that entitle the plaintiff to relief. See Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) dismissal "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). The Court must accept all material allegations as true and construe the complaint in the light most favorable to the plaintiff. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir. 1996) (citation omitted). But the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986) (citation omitted); see Clegg v. Cult Awareness Network, 18 F.3d 752, 754-55 (9th Cir. 1994). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555, 557). Rather, it must plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

Finally, a complaint should not be dismissed without leave to amend unless there is strong evidence that an amendment will result in "undue delay, bad faith, . . . repeated failure to cure deficiencies by amendments previously allowed . . . [or] futility of amendment . . . ." Sonoma Cnty. Ass'n of Retired Emps. v. Sonoma Cnty., 708 F.3d 1109, 1117 (9th Cir. 2013) (quotation omitted); see also Fed. R. Civ. P. 15. The Court should examine whether the complaint can be amended to cure the defect "without contradicting any of [the] original complaint." Reddy v. Litton Indus., 912 F.2d 291, 296 (9th Cir. 1990). Courts should

4

liberally grant leave to amend, but an amended complaint must allege facts consistent with the challenged pleading. Id. at 296-97.

## III.   DISCUSSION

The City moves to dismiss on the grounds for want of Article III standing as to some claims, lack of ripeness as to others, and failure to state a claim as to the rest. See Mot. at 2.

### A.   Standing

Under Article III, plaintiffs in federal court must allege an "actual case or controversy." City of Los Angeles v. Lyons, 461 U.S. 95, 101 (1983). That requires plaintiffs to have standing, which means that they "(1) suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical, (2) the injury is fairly traceable to the challenged action of the defendant, and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Maya, 658 F.3d at 1067 (citation omitted). The injury must therefore "affect the plaintiff in a personal and individual way" and "must actually exist." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1548–49 (2016). And if an injury resulted from a law with multiple parts, "a plaintiff may have standing to challenge some provisions . . . but not others." Clark v. City of Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001).

#### 1.   Sections 23C.08.030-070

Sections 23C.08.030-.070 do not apply the property, and so OPHCA lacks standing to challenge any of them. Section 23C.08.030 applies to the elimination of a dwelling unit that will be replaced by a single household. Section 23C.08.040 applies to the removal of "Residential Hotel Rooms." Section 23C.08.050 governs the demolition of "Commercial, Manufacturing or Community, Institutional or Other Non-Residential Uses." Section 23C.08.060 deals with relocations of buildings from a lot. And Section 23C.08.070 deals with the demolition of a building that the City Building Official has deemed unsafe or presenting a public hazard, which apparently has not happened. And even though OPHCA has standing to challenge Sections 23C.08.010-.020(A), (B) & (D), that does not give it standing to challenge the rest of them. See Clark v. City of Lakewood, 259 F.3d 996, 1006

5

(9th Cir. 2001); City of Los Angeles v. Lyons, 461 U.S. 95, 111-12 (1983).

### 2. Section 23C.08.020(C)

OPHCA also lacks standing to challenge Section 23C.08.020(C), which applies only to buildings that are "occupied." BMC § 23C.08.020(C). This provision requires landlords to pay moving expenses and rent subsidies to "all sitting tenants." Id. By OPHCA's own admission, the property is "presently vacant." See Compl. ¶ 14. For that reason, the City has not asked OPHCA to pay anything under this section. But OPHCA contends that, because the property (allegedly) had tenants when OPHCA applied for a permit, the City Council might apply Section 23C.08.020(C). See Surreply at 2 ¶ 1. And even if not, according to OPHCA, the Berkeley Rent Stabilization Board or even future tenants might try to impose additional fees at some point in the future.

Article III forbids the Court from addressing these speculative worries. See Texas v. United States, 523 U.S. 296, 300 (1998). If and until they become imminent, OPHCA lacks standing to challenge Section 23C.08.020(C).

### B. Takings Challenges

OPHCA claims that the demolition fee violates the Takings Clause of the Fifth Amendment, which provides that no "private property be taken for public use, without just compensation," U.S. Const. amend. V. There is no "'set formula' for determining when 'justice and fairness' require that economic injuries cause by public action be compensated by the government." Penn Cent. Transp. Co. v. New York City, 438 U.S. 104, 124 (1978). Instead, the taking inquiry turns "upon particular circumstances in that case." Id.

OPHCA brings its takings challenges to Sections 23C.08.010-.020(A), (B) and (D) under Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987), Dolan v. City of Tigard, 512 U.S. 374 (1994), and Koontz v. St. Johns River Water Mgmt. Dist., 133 S. Ct. 2586 (2013). Nollan and Dolan considered what happens (1) when "the government approves a development permit conditioned on the owner's conveyance of property interest" and (2) "when the government denies a permit until the owner meets the condition." See Koontz v. St. Johns River Water Managment Dist., 133 S. Ct 2586, 2603 (2013) (Kagan, J., dissenting)

6

1 (summarizing Nollan and Dolan at length).  And because the government does not physically
2 take real property in these situations, an owner is not entitled to "just compensation" unless
3 state law creates a monetary remedy.  Id.  Instead, "the owner is entitled to have the improper
4 condition removed."  Id.  Koontz extended Nollan-Dolan to monetary exactions.  See id. at
5 2598, 2603.

6       The Nollan-Dolan-Koontz test has two prongs.  First, the Court must consider whether
7 an "essential nexus exists between the legitimate state interest and the permit condition
8 exacted by the city."  Dolan, 512 U.S. at 386 (citing to Nollan, 483 U.S. at 837) (internal
9 quotation marks omitted).  Second, if a nexus exists, the Court "must then decide the required
10 degree of connection between the exactions and the projected impact of the proposed
11 development."  Dolan, 512 U.S. at 386.

### 1. Facial Takings Challenge

13       For OPHCA's facial challenge claim to survive, they must demonstrate that there is
14 "no set of circumstances" under which the demolition fee passes the Nollan-Dolan-Koontz
15 test.  See United States v. Salerno, 481 U.S. 739, 745 (1987).  That means OPHCA must
16 show that there is no possible way for the City to levy a demolition fee that meets the nexus
17 and proportionality requirements.  They cannot do so.

18       The demolition fee is required "for each unit demolished to mitigate the impact of the
19 loss of affordable housing in the City of Berkeley" caused by the demolition in an amount to
20 be set by the City Council.  That amount "shall not exceed the additional demand for
21 affordable housing" caused by the demolition.  BMC § 22.20.070.  What is more, the fee will
22 not apply if the project "will not generate any additional need for affordable housing."  Id.

23       The City's ordinance therefore has little in common with the 2014 San Francisco
24 ordinance the Court struck down in Levin v. City of San Francisco, 71 F. Supp. 3d 1072
25 (N.D. Cal. 2014).  That ordinance – on its face – required property owners to pay "an amount
26 equal to twenty-four times the difference between the unit's current monthly rate and the fair
27 market value of a comparable unit in San Francisco."  71 Supp.3d at 1077.  This invariably
28 massive sum went to tenants as compensation for market conditions not of the landlord's

7

making. Id. at 1085. Thus, San Francisco could not prove that the monetary exaction "further[ed] the end advanced as the justification" of its Ordinance, let alone that it did so proportionally. Id. at 1084-86.

By contrast, this ordinance operates more like the 2005 San Francisco ordinance that went unchallenged Levin, which required landlords to pay relocation costs to evicted tenants. Id. at 1085. Just as the 2005 ordinance set a fee tied to the actual costs that a landlord imposes on tenants by withdrawing a unit from the rental market, this ordinance sets a fee tied to the actual costs that a developer imposes on the City's affordable housing stock by demolishing affordable housing units. And because the City may well impose a fee that approximates the effects of the proposed demolition, a set of circumstances exists where both prongs are satisfied. OPHCA's facial challenge therefore has no merit.

### 2. As-Applied Takings Challenge

In general, an as-applied takings claim "is not ripe until the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulation to the property at issue." Williamson Cnty. Reg. Planning Comm'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186 (1985); see Yee v. City of Escondido, 112 S. Ct. 1522, 1531-32 (1992). Furthermore, the injury claimed cannot rely on "contingent future events that may not occur as anticipated, or indeed may not occur at all." Texas v. United States, 523 U.S. 296, 300 (1998).

OPHCA's as-applied takings challenge to the demolition fee is not ripe because the City – as of filing – has not calculated the amount of the fee. OPHCA has not (indeed, cannot) explain how the Court could analyze the proportionality prong of the Nolan-Dollan-Koontz test without that figure.

### C. Due Process Claims

The Fourteenth Amendment provides that no person shall be deprived "of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. Private property is "specifically protected by the Fourteenth Amendment against any state deprivation which does not meet the standards of due process . . . ." Giaccio v. Pennsylvania, 382 U.S. 399, 402

8

(1996). Due process has both procedural and substantive components.

OPHCA maintains that the demolition fee violates procedural due process under two theories: (1) because the City has applied the fee retroactively and without proper notice; and (2) because the terms of the fee are unconstitutionally vague. See Compl. ¶¶ 72-79. OPHCA also maintains that the fee violates substantive due process because it "lacks a rational relationship to a legitimate governmental purpose." See id. ¶¶ 80-91. All three of these arguments fall flat.

### 1. Retroactivity

As an initial matter, OPHCA will not be heard to complain that the demolition fee was enacted before the permit issued but after their permit application was submitted. The City Council was "bound to apply the zoning ordinances in force at the time of the final administrative decision, rather than the ordinances in effect at the time of preliminary proceedings," Russian Hill Imp. Ass'n v. Bd. of Permit Appeals of City & Cty. of San Francisco, 66 Cal.2d 34, 38 (Cal 1967), much like an appellate court or administrative body must apply law changed while the decision is pending, see Ziffrin, Inc. v. United States, 318 U.S. 73, 78 (1943).

Nothing changes because a property owner who "has performed substantial work and incurred substantial liabilities in good faith reliance upon" a land use permit "acquires a vested right to complete construction in accordance with the terms of the permit." Russ Bldg. Partnership v. City and Cnty. of San Francisco, 44 Cal.3d 839, 846 (Cal. 1988) (internal quotation marks omitted). The City may not, say, grant a permit and then later demand a fee not contemplated by the permit. Id. at 846. But it is free to impose a fee in an amount to be set later – so long as the fee was, as here, contemplated by the permit.[2] Id.

### 2. Vagueness

OPHCA also contends that the demolition fee fails due process because it is not based on identifiable "criteria, standards or methodology." Opp. at 12. In support, OPHCA cites

---

[2] Because the Court does not hold that the permit imposed an unconstitutional condition, any dispute about the purported "poison pill" provision in Section 5 of the ordinance is not ripe for review. See Texas v. United States, 523 U.S. 296, 300 (1998).

9

Kolender v. Lawson, 461 U.S. 352, 358 (1983), for the obvious proposition that "due process requires that a city provide meaningful standards for definiteness and clarity" to guide the application of its laws and Desertrain v. City of Los Angeles, 754 F.3d 1147, 115 (9th Cir. 2014), for the equally obvious notion that "[a] law fails under the Due Process Clause if it is so 'vague and standardless' such that 'men [and women] of common intelligence must necessarily guess at its meaning.'" Opp'n at 12. Both cases struck down criminal loitering laws. To top it off, OPHCA cites two more cases that have nothing to do with due process. See Opp'n at 12; Kirtaeng v. Jonh Wiley & Sons, Inc., 136 S. Ct. 1979, 1985-86 (2016) (discussing attorneys' fees in copyright action); Air Transp. Ass'n of Am. v. Dep't of Transp., 119 F.3d 38, 43 (D.C. Cir. 1997) (invalidating an agency policy statement under the Administrative Procedure Act).

In any event, there are standards here. The City must set a fee no higher than necessary to mitigate "the reasonable cost" of the project's effect on affordable housing stock. See BMC § 22.20.070. Although that is not a mathematically precise formula, due process does not require the City to explain its regression methodology on that face of every building permit that it issues. See Russ Bldg., 44 Cal.3d at 846.

### 3. Rationality

OPHCA's substantive due process claim fails so long as the demolition fee has some rational relationship to a legitimate governmental purpose. See N. Pacific LLC v. City of Pacific, 526 F.3d 478, 484 (9th Cir. 2008). That is a low bar that, barring a return to the heady days of Lochner v. New York, 198 U.S. 45 (1905), OPHCA cannot meet. The demolition fee is designed to mitigate the loss of affordable housing units, an obviously legitimate purpose. And there is obviously a rational relationship between that purpose and a fee expressly required to approximate "the reasonable cost" of that loss.

OPHCA has other ideas. It argues that the demolition fee (which, of course, applies to demolitions) is an irrational supplement to a construction fee required by Section 22.20.065(A)(11) of the BMC (which, predictably, applies to new construction). See Compl. ¶¶ 49-50, 82. That will not work. The City could

rationally have thought that demolition affects affordable housing stock in ways separate and apart from how new construction affects housing prices generally. However much OPHCA objects to the wisdom of this scheme, this is not the proper forum for those objections.  See NFIB v. Sebelius, 132 S. Ct. 2566, 2579 (2012) (observing that courts "are vested with the authority to interpret the law" but "possess neither the expertise nor the prerogative to make policy judgments").

### D. State Law Claims

Because none of OPHCA's federal law claims get off the ground, the Court lacks supplemental jurisdiction over its state law claims.  See 28 U.S.C. § 1367.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS the City's motion to dismiss with leave to amend in light of this order.[3]  The Court therefore GRANTS in part and DENIES in part OPHCA's motion for leave to file a first amended complaint and VACATES the hearing set for December 16, 2016.

**IT IS SO ORDERED.**

Dated: November 14, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE

---

[3] OPHCA's proposed first amended complaint (dkt. 46-3) will not do.